[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT
This vigorously disputed post-judgment matter comes to the Court by a motion for contempt filed March 24, 1992, in which the defendant alleges that the plaintiff has refused and neglected to comply with the February 21, 1992 judgment of the Superior Court.
Both parties were present and were represented by counsel at the short calendar in Norwich on May 4, 1992, when evidence was taken by the Court.
Judge Mihalakos issued a memorandum of decision in this dissolution action on February 21, 1992. Among other things, the parties were given custody of the two minor children jointly with physical possession with the plaintiff and certain visitation was allowed the defendant. The defendant husband was ordered to convey his interest in the package store business owned by the parties and the package store real property owned by the parties to the plaintiff wife subject to a certain mortgage obligation. The wife was ordered to convey the family residence to the husband but was permitted exclusive use during a specified period of time subject to her payment of the mortgage and certain expenses during her occupancy. The wife's obligation to make those payments terminated at such time as she should leave the premises which she did in March of 1992.
The present controversy arises out of the following language in the Court's memorandum of decision:
 "(8) All of the furnishings in the marital home shall become the sole and exclusive CT Page 4210 property of the wife with the exception of the following which shall be made available to the husband forthwith.
a. Antique bottle collection;
b. Gun collection;
c. His stereo;
d. His tools;
e. The family camper . . . ."
The defendant's motion for contempt of March 24, 1992 alleged that the plaintiff violated said order and has refused to return some of the items referred to and has removed from the marital residence certain fixtures which constitutes a violation of the Court's judgment.
The defendant testified on his own behalf at the hearing and offered certain exhibits. Defendant's Exhibit No. 1 consists of a list of guns which the defendant testified was the "gun collection" which was left on the property when he left in December of 1989. Defendant's Exhibit No. 2 purports to be a list of the items which constitute "his stereo," his antique bottle collection and the family camper. Defendant's Exhibit No. 3 purports to be a list of tools which the defendant claims to have been present on the property when he left in December of 1989. Defendant's Exhibit No. 4 is a Preston Trading Post receipt for the furnace (Jensen 24A).
In summary, the defendant testified that he has received from the plaintiff the antique bottle collection and the family camper, except that the plaintiff removed the radio and did not return the title to the camper or the wiring and hoses which are used to hook up the camper. The plaintiff claims that she has no information concerning the location of the title or the other items which had been used in connection with the family camper and that the radio was "hers." The defendant testified that the plaintiff after the motion for contempt did return to him certain items which were on his list of guns (Defendant's Exhibit 1). Those items are marked with an asterisk on the exhibit. He testified, however, that the plaintiff did not return and has given him no accounting for the Savage model 219 .22 caliber Hornet, the Colt .380 automatic with holster, or the .25 ACP pocket automatic or the Stevens Crack Shot .22 caliber falling block rifle. In addition, with regard to the gun collection ordered to be turned over by the Court, the defendant claims that the CT Page 4211 plaintiff did not return the holster for the Colt Detective Special or for the Dan Wesson. Also missing, according to the testimony of the defendant, was the Smith Wesson model 27 gun case and holster and the case and reloading dies connected with the Remington and Custom Mauser. Also missing was the forearm and certain extra barrels for the Thompson Center Contender.
The plaintiff offers no explanation in her testimony for the missing items nor has she contested the fact that they constituted a part of the gun collection of the defendant. She claims to have turned over what she had.
With regard to the stereo equipment listed on Defendant's Exhibit 2, the plaintiff claims that in compliance with the court order, she did deliver to the defendant "a stereo." The defendant claims that the stereo which was given to him was not "his stereo" but was given to her by a relative and that his stereo consisted of the items listed on Exhibit 2. The plaintiff claimed that the items listed on Exhibit 2 constituted the family stereo and she acknowledged taking those items with her to her new residence.
With regard to the listing of tools indicated on Defendant's Exhibit 3 (3 pages), some of the items have been returned as indicated by the asterisk. With regard to the balance of the items, both the plaintiff and her mother disputed the existence of the items and claimed to have returned to him all of the tools which could be found on the premises falling into the category ordered by the court. The plaintiff introduced a photograph (Plaintiff's Exhibit A) which shows a portion of the basement of the family residence which the plaintiff and her mother testified was the location of all of the tools except for those scattered around here and there. The exhibit does show a Stihl chain saw. The chain saw was listed on Defendant's Exhibit 3 and has not been returned to the defendant nor has the failure to do so been explained by the plaintiff who by her exhibit has acknowledged the possession of the same. The defendant offers no evidence of ownership other than his testimony with regard to the disputed items of tools.
In addition to the claims of the defendant that the plaintiff has not returned items ordered to be made available, as above, the defendant also claimed that certain fixtures from the house were removed by the plaintiff when she vacated the premises, including the furnace, a generator, a pair of glass-paneled French doors, a woodstove built into a fireplace, a damper in a chimney, the storm/screen door on the front of the house, the bifold louvered closet doors in all CT Page 4212 three bedrooms, certain portions of light fixtures from two bedrooms and a bath, and a smoke detector hard-wired into the basement. In addition, the plaintiff admitted removing the electric heating panels from the living room together with its wiring.
Although the parties were substantially at issue with regard to many of the items in question, they seemed to agree that those items are not presently located in the house which were ordered conveyed to the defendant as part of the property division in the court's dissolution judgment.
The plaintiff makes various claims with regard to these items. First, she claims that some of the items do not constitute "fixtures" but instead are "furnishings" which were ordered to be the property of the plaintiff in the court's judgment. The American Heritage Dictionary defines "furnishings" as "the furniture, appliances and other movable articles in a home or office" or "wearing apparel and accessories."
The testimony accepted by the Court established that the furnace which was a Jensen 24A purchased in the name of Sherry Corcoran, the plaintiff, at the Preston Trading Post in Preston, Connecticut, on August 13, 1991, was installed into the marital residence with certain considerable ductwork connecting the furnace to the various rooms of the house. The plaintiff acknowledged paying for the installation of the ductwork and that the ductwork was attached to the furnace. The furnace was also attached to the chimney. When the plaintiff moved out of the premises to surrender them to the defendant, she had a friend remove the furnace which, according to his testimony, was to be sold so as to apply the proceeds to a loan due from the plaintiff. The Court finds the furnace was a fixture and not "furnishings."
The generator was hard-wired into the electrical system of the house with double-throw switches to provide electricity during times when the electrical service in this rural community was interrupted. The defendant testified and the Court finds that the generator was used in that connection repeatedly during the time that the family occupied the premises. The plaintiff removed the wiring from the electrical service and removed the generator from the premises claiming it was not a fixture but constituted "furnishings." The Court finds under the circumstances of this case, with the generator being hard-wired into the electrical circuitry of the house, that the same constituted a fixture notwithstanding the wheels attached. CT Page 4213
Similarly, the plaintiff claimed the woodstove which was removed from the living room fireplace when she moved was not a fixture. The defendant testified and the Court finds that the woodstove was, in fact, inserted into the fireplace in such a way that the damper in the chimney flue had been removed to accommodate the same. The Court finds that the woodstove is not a fixture, but that the damper from the chimney flue is a fixture which is missing and has been removed by the plaintiff.
The plaintiff makes a second type of claim with regard to other items. Specifically, she claims that the globes from the light fixtures which are not now present were broken in the course of the ordinary use of the property including her claim that the defendant broke one of them. The plaintiff also claims that the three closet doors which were removed from the bedrooms were removed because they had been "trashed" by the kids having broken the louvers from time to time. Similarly, the plaintiff testified that the basement smoke detector was, in fact, removed by the defendant early in their occupancy of the family home because it kept going off for no reason other than high humidity.
The third category of items in this area of the dispute involves the glass-paneled French doors which the plaintiff removed from the premises because she had recently added the same. She also acknowledged removing the electric baseboard heat and its wiring from the living room and the radio from the camper.
In considering the appropriate disposition of this motion, the Court will carefully consider the appearance, demeanor and testimony of the witnesses as it relates to their credibility. There appears to be some merit on each side of these arguments but the Court accords more credibility to the defendant as a witness.
Giving consideration to the evidence in this case, the Court finds that the plaintiff is in contempt of the court decree by virtue of her conduct which is found in some instances to be in clear violation of the Court's decree and intentionally done by the plaintiff.
Accordingly, the Court orders that the plaintiff return to the defendant the following items of personal property or an equivalent replacement:
1. Gun collection items
a. Savage model 219.22 Hornet CT Page 4214
 b. Savage Stevens Crack Shot .22 caliber falling block
 c. Thompson Center Contender forearm and extra barrels
d. Colt .380 automatic with holster
e. .25 ACP pocket automatic
 f. Reloading cases and dies for Remington model 788 and Custom Mauser Mark S .257
 g. Holsters for Colt, Dan Wesson and Smith 
Wesson model 27
 2. Stereo equipment as listed on Defendant's Exhibit 2
3. Stihl 045 chain saw
4. Radio removed from family camper
In addition, it is ordered that the following fixtures removed from the property in violation of the court order be returned and installed on the family premises:
 A. Jensen model 24A furnace reconnected to the chimney and ductwork
 B. The generator reconnected to the electric service with a double-throw switch meeting the building code and electrical code requirements
C. French doors
D. Damper from chimney in the living room
 E. Baseboard electric heat units with wiring connected in living room
No order is entered with regard to the folding doors for bedroom closets, smoke detector or globes on light fixtures or the storm/screen door which the Court finds to have been destroyed in the ordinary course of their use without fault on the part of the plaintiff.
The plaintiff in lieu of actual installation of the CT Page 4215 above fixtures may provide the defendant with the cost of acquisition and installation.
The return and/or delivery and installation or payment is to be completed prior to June 29, 1992, and this case is assigned for further hearing on that day when the parties are ordered to be present with their counsel for a determination of what further action to take with regard to compliance.
The plaintiff is ordered to pay to the defendant counsel fees in the amount of $750 within thirty days.
LEUBA, J.